UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NORTH CAROLINA RIGHT TO LIFE, INC., *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Misc. Action No. 05-289 (RCL) |
| LARRY LEAKE, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |
| NORTH CAROLINA RIGHT TO LIFE, INC., *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Misc. Action No. 05-351 (RCL) |
| LARRY LEAKE, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

### MEMORANDUM OPINION

This action is before the Court on motions [1] in two separate actions (Misc. A. No. 05-289 and Misc. A. No. 05-351) to quash subpoenas issued by this Court. Plaintiffs North Carolina Right to Life, Inc., and related entities (collectively, "NCRL") also plaintiffs in an action currently pending in the District Court for the Eastern District of North Carolina (Case No. 5:99-CV-798), issued subpoenas to three non-parties: Democracy 21, the Campaign Legal Center ("CLC") and the Pew Charitable Trusts ("Pew"). Democracy 21 and the CLC filed a Joint

Motion [1] of Non-Parties to Quash Subpoenas on July 25, 2005, to which NCRL filed an Opposition [4] on August 18, 2005, and the subpoenaed parties filed a Reply [7] on September 2, 2005. In the separate action, Pew filed its Motion [1] of Non-Party to Quash Subpoena and Request for Oral Hearing on September 7, 2005, to which Plaintiff filed a Response [8] on September 16, 2005. Pew then submitted a Reply [7] on September, 30, 2005, after being granted an extension to do so.

Upon a thorough review of each parties' filings, the applicable law and record herein, this Court finds that the non-parties' motions [1] in each action should be granted.

## I. BACKGROUND

In late 1999, NCRL initiated suit in the Eastern District of North Carolina challenging the constitutionality of several North Carolina statutes regulating campaign finance and advocacy in that state. Amici's Mem. Supp. 2. During the course of the action, Democracy 21 and CLC ("Amici") – who were not, and are not, parties to the action – were granted to leave to file as friends of the court. On April 11, 2005, they filed a joint amicus brief urging the court to reject Plaintiffs' constitutional claims. Seventeen days later, NCRL presented the Amici with subpoenas demanding files relating to the Amici's contacts with a number of other organizations. Amici's Mem. Supp. 5-10. A few months later, on August 15, 2005, NCRL subpoenaed Pew for documents relating to its funding relationships with the Amici and an expert appearing in the underlying litigation, Mr. Thomas Mann. The Amici and Pew resisted the subpoena, and after failing to resolve the dispute by speaking with Plaintiffs' counsel, they filed the respective motions to quash.

The movants object to the subpoenas for three reasons: first, the documents requested are

irrelevant to the underlying action. Amici's Mem. Supp. 10-15; Pew's Mem. Supp. 15-22. Second, compliance with the subpoena would unduly burden movants. Amici's Mem. Supp. 10-15; Pew's Mem. Supp. 15-22. Finally, the information sought is protected by a First Amendment privilege protecting confidential records of association. Amici's Mem. Supp. 15-19; Pew's Mem. Supp. 9-14. Plaintiffs counter that the documents are relevant because they may reveal agreements, if any, between the Amici, Mr. Mann and funding sources. Resp. to Amici 9-11; Resp. to Pew 7-10. Such agreements, Plaintiffs continue, would be indicative of bias on the part of witnesses or the Amici, and as such, are probative of their credibility. Resp. to Amici 9-11; Resp. to Pew 7-10.

Plaintiffs dispute the movants' burden claims by referring to the substantial sums of money spent in the campaign finance reform community, and to the financial resources of the Amici and Pew. Resp. to Amici at 15-16; Resp. to Pew at 13-14. They further argue that their need to refute the "testimony" offered by Amici and Mr. Mann outweighs any burden on the Amici and Pew. Resp. to Amici at 12; Resp. to Pew at 10-11. With regard to the movants' First Amendment claims, Plaintiffs respond that the privilege is inapposite here because the subpoenas seek only disclosure of non-personal information by a non-governmental entity. Resp. to Amici at 18-20; Resp. to Pew at 14-23.

## II. DISCUSSION

This Court has the authority to quash a subpoena that compels production of privileged documents or subjects the subpoenaed party to undue burden. FED. R. CIV. P. 45(c)(3)(A)(iii)-(iv). While quashing a subpoena goes against courts' general preference for a broad scope of discovery, *see, e.g., Hickman v. Taylor*, 329 U.S. 496, 501 (1947); FED. R. CIV. P. 26(b)(1),

limiting discovery is appropriate when the burden of providing the documents outweighs the need for it. *E.g., Wyoming v. U.S. Department of Agriculture*, 208 F.R.D. 449, 452 (D.D.C. 2002).

Undue burden is determined by reference to factors such as "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Flatow v. Islamic Republic of Iran*, 196 F.R.D. 203, 206-07 (D.D.C. 2000) (Lamberth, J.). Moreover, non-party status is also relevant in considering the burden. *Wyoming*, 208 F.R.D. at 452.

The relevance of the documents requested in the instant case is asserted to be their ability to reveal bias. Bias, Plaintiff asserts, is always relevant. The bias that is relevant, however, is that of a *witness* or *party* in the case, not of an unrelated non-party. The mere filing of an amicus brief (or in Pew's case, of merely having granted funds to amicus) does not open oneself to broad discovery demands, nor does it make one's bias, if any, relevant to the underlying action.

Credibility of amici is a determination to be made by the trial judge, not a question that the parties should pursue in discovery. It is well documented that the role of amici has, over time, appeared more similar to that of an advocate than of purely disinterested advisers to the court. *See, e.g., Neonatology Assocs., P.A. v. Comm'r of Internal Revenue*, 293 F.3d 128, 131 (3d Cir. 2002) (noting that the view of amici as impartial adviser "became outdated long ago") (*citing* Samuel Krislov, *The Amicus Curiae Brief: From Friendship to Advocacy*, 72 YALE L.J. 694, 703 (1962)). As such, were the bias or credibility of amici presumptively relevant in every case, litigation and discovery of the issue would threaten the efficacy of the federal courts. Furthermore, imposing such a burden on amici would undoubtedly discourage entities from

making amicus filings at all, so as to avoid subjecting themselves to severe scrutiny and onerous discovery requests.

This Court is also unpersuaded that the bias of the Amici is relevant, credibility issues notwithstanding, to the underlying action. Plaintiffs claim that the documents sought are relevant to refute the "evidence" that the Amici offered in their brief; further, that it is relevant more generally in regard to "other incidents of the same type." Resp. to Amici 10; Resp. to Pew 8. These arguments are merely reformulations of Plaintiffs' bias claim. This Court does not find that the Amici offered *evidence* of any kind. Furthermore, in light of this Court's finding that the alleged bias of the Amici is not relevant, this Court fails to see how any "similar incidents" could be relevant, or could lead to evidence that is relevant.

The burden represented by the subpoenas also weighs in favor of quashing: Plaintiffs seek a vast array of documents arising from "contacts" between (1) Pew and the Amici and (2) the Amici and some 27 different organizations, their grantees and sub-grantees. The declarations submitted on behalf of the Amici and Pew indicate with specificity the burden that compliance would impose. Democracy 21 is a non-profit organization with only two staff members and estimates that it would take one staff member 15-20 days to produce the responsive documents. Wertheimer Decl. ¶ 14. Similarly, CLC is a non-profit organization with only five full-time employees. Potter Decl. ¶ 14. Complying with the subpoena would take one CLC employee ten to 15 days, or more. *Id.* It is a great burden to require an organization to sacrifice such a large proportion of its staff for several weeks. Pew asserted that compliance with the subpoena would require the time of at least four to six staff members for a month, and could require more time on the part of Pew's inside and outside counsel. Horwitz Decl. ¶ 22. Such a burden, even for a

relatively large organization such as Pew, is excessive in this Court's opinion, particularly in light of the fact that Pew is neither a party, nor even an amicus, in the underlying action.

In light of the foregoing, this Court finds that the balancing test must come out on the side of the movants. The Amici and Pew have successfully shown that complying with the subpoenas would cause them undue burden. More importantly, Plaintiffs have failed to demonstrate relevance. Plaintiffs do not cite, nor has this Court found, that any federal court in the history of our country has ever ordered an amicus to produce documents relating to its funding activities, and this Court will not be the first to do so. This Court therefore disposes of the motions on the basis of the undue burden balancing test, and accordingly does not reach the First Amendment issue. Plaintiffs' subpoenas of the three non-party movants shall be quashed.

### III. CONCLUSION

For the foregoing reasons, this Court finds that the Movants' Motion [1] to Quash Subpoena shall be granted.

A separate Order shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, October 6, 2005.